842 So.2d 773 (2003)
PNR, INC., Petitioner,
v.
BEACON PROPERTY MANAGEMENT, INC., et al., Respondents.
No. SC01-1507.
Supreme Court of Florida.
March 13, 2003.
C. Vincent LoCurto of Brown, LoCurto & Robert, LLP, Fort Lauderdale, FL; and Brian F. LaBovick, Jupiter, FL, for Petitioner.
David J. Maher and Lance A. Harke of Harke & Clasby LLP, Miami, FL; and Law Offices of Harry J. Ross, Boca Raton, FL, for Respondents.
Raymond G. Ingalsbe, P.A., Palm Beach Gardens, FL; William C. Bielecky, P.A., and Mark S. Fistos of James, Hoyer, Newcomer & Smiljanich, P.A., Tallahassee, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae.
LEWIS, J.
We have for review Beacon Property Management, Inc. v. PNR, Inc., 785 So.2d 564 (Fla. 4th DCA 2001), which expressly and directly conflicts with the decisions in Delgado v. J.W. Courtesy Pontiac GMC-Truck, 693 So.2d 602 (Fla. 2d DCA 1997), Suris v. Gilmore Liquidating, Inc., 651 So.2d 1282 (Fla. 3d DCA 1995), and Rollins, Inc. v. Heller, 454 So.2d 580 (Fla. 3d DCA 1984). We have jurisdiction. See *774 art. V, § 3(b)(3), Fla. Const. For the reasons stated herein, we quash the district court's decision and remand with instructions to the district court to reconsider the judgment on Petitioner's statutory cause of action.

BACKGROUND AND FACTS
While our decision in the instant case is directed solely to the district court's interpretation of the Florida Deceptive and Unfair Trade Practices Act, § 501.201-.213, Fla. Stat. (2002) ("FDUTPA" or the "Act"), we provide a brief discussion of the salient facts. The instant action arises from a business dispute involving the tenancy of PNR, Inc., in a building owned by Ocean One North, Inc. ("Ocean One"). In September of 1994, PNR purchased a restaurant and was assigned a lease to the restaurant's facility which was located on the third floor of a building owned by Ocean One. At the time of purchase, approximately eight years remained on the lease, and the lease contained a clause which provided an option to extend for an additional ten years. Ocean One is equally owned by Matt Giacomino, Ernest W. Willis, and their respective spouses. Willis and his spouse also jointly own Beacon Property Management, Inc. ("Beacon").
Prior to PNR's purchase of the restaurant, Beacon served as the property manager of the building in which the restaurant was located. The terms of the property management agreement between Beacon and Ocean One required Beacon to collect rents from tenants, pay bills on the property, provide an accounting to the owners, and act as a liaison between the owners and tenants. The written agreement did not require Beacon to maintain the premises, and actually expired by its own terms two months prior to PNR's purchase of the restaurant. Under the provisions of the lease assigned to PNR, Ocean One was responsible for keeping the major structural components of the building in good repair.
Contractual obligations notwithstanding, Giacomino continuously referred PNR to Beacon for maintenance requests. The president of PNR testified at trial that Giacomino led him to believe that Beacon was responsible for maintenance issues such as roof leaks, tar leaks through the air conditioning system, and other adverse conditions that PNR experienced with increasing frequency from the time of purchase and possession of the real property. Giacomino testified during these proceedings that he indeed believed Beacon to be responsible for this type of maintenance on the premises.
PNR's requests for maintenance were unattended, resulting in numerous building code violations, and, eventually, even the north wall of the building collapsed on July 1, 1995. The collapse forced PNR to cease restaurant operations for a period of seven months. The restaurant was eventually evicted from the premises and it terminated operations. Evidence adduced at trial showed that contemporaneous with the events of this case, Willis and Giacomino were embroiled in their own business dispute in which Giacomino accused Willis and Beacon of intentionally neglecting the building as part of a plan to extinguish his interest in Ocean One.
Following an eight-day trial, the jury returned a verdict against Willis and Beacon on all but one of PNR's causes of action, including PNR's claim that the methods employed in the failure of Ocean One, Willis, and Beacon to properly maintain the premises constituted unfair and deceptive trade practices under the FDUTPA. The jury awarded $1.2 million in damages, including $500,000 in punitive damages, against Willis, individually, and *775 $540,000 in damages, including $140,000 in punitive damages, against Beacon. The Fourth District reversed, in pertinent part, the judgments based on the FDUTPA. See Beacon, 785 So.2d at 568. This review followed.

ANALYSIS
The only issue we address is whether the FDUTPA may be applied in a private cause of action arising from unfair or deceptive acts involving a single party in a single transaction or directed to a single contract. The Beacon court concluded that it cannot as a matter of law. According to the court below, the FDUTPA does not embrace single acts of iniquity or deception because the "operative words of section 501.204(1) are methods and practices," which are defined as "`a regular and systematic way of accomplishing something,'" and a "`habitual or customary action or way of doing something,'" respectively. Beacon, 785 So.2d at 568 (quoting American Heritage Dictionary of the English Language 1135, 1422 (3rd ed.)) (emphasis supplied). Thus, the district court set aside the judgments based on the FDUTPA, concluding that because the evidence in the instant case was limited to a single lease in question, and a single tenant, it did not imply the existence of a method or practice with regard to other leases and other tenants. See id.
The district court's interpretation contravenes the plain meaning of the language of the FDUTPA. See St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982) ("While legislative intent controls construction of statutes in Florida, that intent is determined primarily from the language of the statute. The plain meaning of the statutory language is the first consideration.") (citations omitted). Here, the district court simply excised the word "acts" from its rendition of the "operative words" of the FDUTPA. See § 501.204(1), Fla. Stat. (2002) (prohibiting "[u]nfair methods of competition ... and unfair or deceptive acts or practices in the conduct of any trade or commerce") (emphasis supplied). In so doing, the district court focused its analysis solely on the words "method" and "practice." However, when each of the terms designating proscribed conduct is afforded operation, the Florida Legislature's intent to protect against misdeeds directed to a single party, as well as behavior directed to multiple parties, clearly emerges.
In rendering this analysis, we acknowledge that section 501.204(1) utilizes the word "acts"plural. However, when considered with the other provisions of the FDUTPA, it is clear that the prohibition is broad enough to protect against instances of unfair or deceptive conduct as to a single party or under a single transaction or contract. See § 1.01(1), Fla. Stat. (2002) (providing that the plural includes the singular where the context of the statutory provision allows). Here there were "acts" which allegedly caused harm to a single claimant. The very provisions that outline the parameters for individual remedies under the FDUTPA are triggered by the commission of a single act. See § 501.211(1), Fla. Stat. (2002) ("[A]nyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated ... this part.") (emphasis supplied); see also § 501.211(2), Fla. Stat. (2002) ("[A] person who has suffered a loss as a result of a violation of this part ... may recover actual damages ....") (emphasis supplied). Indeed, the FDUTPA is replete with references to "an act"singular. See also §§ 501.2075 (providing civil penalties for the willful use of an unlawful "method, act, or practice"); 501.2077(2) *776 (providing the same for violations involving senior citizens or handicapped persons); 501.2105(1) (governing attorney's fees in "any civil litigation resulting from an act or practice involving a violation"); 501.212(1), Fla. Stat. (2002) (excepting "an act or practice" required or specifically permitted by law).
While we need not resort to extrinsic aids in construing the unambiguous provisions of the FDUTPA, see A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931), our conclusion is bolstered by contrasting the language of the Act against other statutory provisions in which the Florida Legislature has conditioned relief on the existence of a pattern of conduct. Specifically, to state a cause of action for certain unfair settlement practices in the insurance context, a complainant must show that the defendant committed or performed the act with "such frequency as to indicate a general business practice." § 626.9541(1)(i)3, Fla. Stat. (2002). No such language qualifies the private right of action provided under the FDUTPA.
The district court's conclusion that the FDUTPA's private right of action is only available to plaintiffs able to demonstrate multiple, violative acts against multiple parties or in multiple transactions runs contrary to the interpretation of the Act that has been applied in every appellate district in this State. In Delgado v. J.W. Courtesy Pontiac GMC-Truck, 693 So.2d 602 (Fla. 2d DCA 1997), the Second District reversed a trial court's judgment on the pleadings in an action based upon the FDUTPA which involved a single party and a single transactionthe purchase of one automobile. See id. at 603-04. In its analysis of the case, the Delgado court stated that in passing the FDUTPA, the Florida Legislature intended to create a simplified statutory cause of action to provide additional substantive remedies to the citizens of this state to recover economic damages related to products or services purchased in a transaction infected with unfair or deceptive trade practices or acts. See id. at 606. The decision in Delgado is not an anomaly. District courts in the First, Third, Fourth, and Fifth Districts have likewise determined that a single act or transaction constitutes a sufficient basis for a FDUTPA action.[1] We also acknowledge that while there may not be a consensus among the other states, numerous courts have determined that their trade practice statutes apply to single instances of unfair or deceptive conduct. See, e.g., Drybrough v. Acxiom Corp., 172 F.Supp.2d 366, 369 (D.Conn.2001) (determining that a single act may be the basis for a claim under state trade practice law); Catrett v. Landmark Dodge, Inc., 253 Ga. App. 639, 560 S.E.2d 101, 105 (2002) (same); Breckenridge v. Cambridge Homes, Inc., 246 Ill.App.3d 810, 186 Ill. Dec. 425, 616 N.E.2d 615, 623 (1993) (same).
The dissents would simply discharge jurisdiction in the instant matter and permit *777 the incorrect statement of the principle of law to be perpetuated directly contrary to decisions of other district courts of appeal. As discussed above, the point of law announced by the district court in Beacon cannot coexist with decisions from courts in other Florida appellate districts. Our constitutional responsibility to resolve this interdistrict conflict, and ensure the consistent application of the law throughout this state, see Florida Star v. B.J.F., 530 So.2d 286, 288 (Fla.1988), dictates that we address the very real and direct conflict created by the Beacon court's pronouncement of a novel statutory interpretation that directly contravenes the interpretation undergirding numerous decisions in other districts. Discharge of jurisdiction in the instant matter would permit the further advancement of an incorrect principle of lawa troubling prospect when one considers that the Beacon court's erroneous interpretation of the FDUTPA has already been cited as direct authority by another district court in Keech v. Yousef, 815 So.2d 718 (Fla. 5th DCA 2002). See id. at 719 (following the Fourth District's statement that the FDUTPA requires more than an isolated act of misconduct and observing that the plaintiff had proved "only one act that fell under DUTPA rather than showing ... a pattern of prohibited practices, as required").
Based on the foregoing, we conclude that the FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract.[2] An unfair practice is "one that `offends established public policy' and one that is `immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Samuels, 782 So.2d at 499 (quoting Spiegel, Inc. v. Fed. Trade Comm'n, 540 F.2d 287, 293 (7th Cir.1976)); see Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen., 761 So.2d 1256, 1263 (Fla. 3d DCA 2000) (stating that deception occurs if there is a "`representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'") (quoting Southwest Sunsites, Inc. v. Fed. Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir.1986)). We quash the decision of the district court and remand the case for further consideration consistent with the principles set forth herein.
It is so ordered.
ANSTEAD, C.J., PARIENTE and QUINCE, JJ., and SHAW, Senior Justice, concur.
WELLS, J., dissents with an opinion.
HARDING, Senior Justice, dissents with an opinion, in which WELLS, J., concurs.
WELLS, J., dissenting.
My first preference in this case would be to exercise our discretion and discharge jurisdiction since the factual circumstances of this case and the conflict cases are so different that the cases can be plainly distinguished.
Since the majority keeps this case, however, I dissent from quashing the decision *778 of the Fourth District. This is a breach of contract case, and I agree with the Fourth District that the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is not intended to convert every lease breach into a claim under the Act.
I have seriously considered the majority's footnote 2 in light of the facts alleged in this case. I continue to conclude that what is set forth in the majority opinion as the facts of this case are, in sum, a breach of a lease contract. I do not see how the district courts or the trial courts are to differentiate between which breach of lease cases state a claim under FDUTPA and which do not. I continue my concern that the practical effect of this decision will be to convert every breach of lease claim into a claim under FDUTPA, though I read footnote 2 to mean that this is not what the majority intends.
HARDING, Senior Justice, dissenting.
I would discharge jurisdiction as having been improvidently granted. I do not find any conflict which would sustain this court's retaining jurisdiction.
WELLS, J., concurs.
NOTES
[1] See Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (reversing trial court's dismissal of a FDUTPA claim stemming from a single automobile purchase); Davich v. Norman Bros. Nissan, Inc., 739 So.2d 138, 141 (Fla. 5th DCA 1999) (vacating summary judgment on a FDUTPA claim based on a single transaction in which an automobile dealer allegedly concealed damage to the paint finish of a car purchased by the plaintiff); Suris v. Gilmore Liquidating, Inc., 651 So.2d 1282, 1283 (Fla. 3d DCA 1995) (reversing a directed verdict on a FDUTPA claim stemming from a single transaction in which the dealer allegedly misrepresented the price of the car being sold and the value of the consumer's trade-in); Urling v. Helms Exterminators, Inc., 468 So.2d 451, 453-54 (Fla. 1st DCA 1985) (reversing a directed verdict on a FDUTPA claim based on a single transaction in which a termite inspector allegedly phoned in a single false inspection report).
[2] Contrary to the position articulated in the dissenting opinion of Justice Wells, this opinion does not operate to convert every breach of contract or breach of lease case into a claim under the Act. Indeed, such a construction would be precluded by the FDUTPA, which only reaches conduct that is unfair or deceptive as judged by controlling case law. To the extent an action giving rise to a breach of contract or breach of lease may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA. Our holding today merely remands the case to the district court for consideration under appropriate law and changes nothing with regard to such issue.