890 So.2d 274 (2004)
BEACON PROPERTY MANAGEMENT, INC., and Ernest W. Willis, Appellants,
v.
PNR, INC., a Florida corporation d/b/a Goodfellas Restaurant, Appellees.
No. 4D99-627.
District Court of Appeal of Florida, Fourth District.
November 10, 2004.
Rehearing Denied January 27, 2005.
*275 David J. Maher, Lance A. Harke and Harry J. Ross of the Law Office of Harry J. Ross, Boca Raton, and Harke & Clasby, LLP., Miami, for appellants.
C. Vincent LoCurto of Brown, LoCurto, & Robert, LLP., Fort Lauderdale, and Brian F. Labovick, of Labovick, Labovick, and Wald, P.A., Jupiter, for appellee.
FARMER, C.J.
This case recurs on remand from the Florida Supreme Court. In accord with the Supreme Court's Mandate, we reconsider PNR's claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) in light of the supreme court's holding that the statute "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single practice." See PNR, Inc. v. Beacon Prop. Mgt., Inc., 842 So.2d 773, 777 (Fla.2003).
We begin with the facts stated by the supreme court as follows.
"The instant action arises from a business dispute involving the tenancy of PNR, Inc., in a building owned by Ocean One North, Inc. (`Ocean One'). In September of 1994, PNR purchased a restaurant and was assigned a lease to the restaurant's facility which was located on the third floor of a building owned by Ocean One. At the time of purchase, approximately eight years remained on the lease, and the lease contained a clause which provided an option to extend for an additional ten years. Ocean One is equally owned by Matt Giacomino, Ernest W. Willis, and their respective spouses. Willis and his spouse also jointly own Beacon Property Management, Inc. (`Beacon').
"Prior to PNR's purchase of the restaurant, Beacon served as the property manager of the building in which the restaurant was located. The terms of the property management agreement between Beacon and Ocean One required Beacon to collect rents from tenants, pay bills on the property, provide an accounting to the owners, and act as a liaison between the owners and tenants. The written agreement did not *276 require Beacon to maintain the premises, and actually expired by its own terms two months prior to PNR's purchase of the restaurant. Under the provisions of the lease assigned to PNR, Ocean One was responsible for keeping the major structural components of the building in good repair.
"Contractual obligations notwithstanding, Giacomino continuously referred PNR to Beacon for maintenance requests. The president of PNR testified at trial that Giacomino led him to believe that Beacon was responsible for maintenance issues such as roof leaks, tar leaks through the air conditioning system, and other adverse conditions that PNR experienced with increasing frequency from the time of purchase and possession of the real property. Giacomino testified during these proceedings that he indeed believed Beacon to be responsible for this type of maintenance on the premises.
"PNR's requests for maintenance were unattended, resulting in numerous building code violations, and, eventually, even the north wall of the building collapsed on July 1, 1995. The collapse forced PNR to cease restaurant operations for a period of seven months. The restaurant was eventually evicted from the premises and it terminated operations. Evidence adduced at trial showed that contemporaneous with the events of this case, Willis and Giacomino were embroiled in their own business dispute in which Giacomino accused Willis and Beacon of intentionally neglecting the building as part of a plan to extinguish his interest in Ocean One.[[1]] Following an eight-day trial, the jury returned a verdict against Willis and Beacon on all but one of PNR's causes of action, including PNR's claim that the methods employed in the failure of Ocean One, Willis, and Beacon to properly maintain the premises constituted unfair and deceptive trade practices under the FDUTPA. The jury awarded $1.2 million in damages, including $500,000 in punitive damages, against Willis, individually, and $540,000 in damages, including $140,000 in punitive damages, against Beacon."
842 So.2d at 773-75.
After remand, we granted oral argument to consider PNR's claim that the landlord's conduct in "intentionally neglecting" the premises and in failing to make necessary repairs "causing it to violate nearly every basic building code provision" amounted to an unfair and deceptive trade act or practice under FDUTPA. We also necessarily consider defendants' contrary argument that PNR is not entitled to relief under FDUTPA as a matter of law because PNR's claim does not involve a "consumer transaction." We have carefully examined the evidence regarding the deceptive and unfair trade practices acts.
In its review, the supreme court limited itself to the issue whether FDUTPA applies to a single act of deception. Its conclusion was, as we have just indicated, that it does. We now proceed with that understanding and turn to the questions described. The argument that FDUTPA applies only to a consumer transaction, if valid, implicates an asserted threshold for relief under the statute, and so we begin with it.
*277 As originally drafted, FDUTPA outlawed "[u]nfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." § 501.202, Fla. Stat. (1973). Although the general proscription of FDUTPA just quoted did not contain any indication that it was intended to be limited to a consumer transaction, the legislature included a definitional provision saying that:
"(1) `Consumer transaction' means a sale, lease, assignment, award by chance, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household or that relate to a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged, or a solicitation by a supplier with respect to any of these dispositions."
§ 501.203(1), Fla. Stat. (1973). Then in 1979, the legislature added a definition of "consumer" saying:
"`Consumer' means an individual; child, by and through its parent or legal guardian; firm; association; joint adventure; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination."
Ch. 79-386, Laws of Fla.
We note that the definition of consumer includes several business entities, which would seem to extend its meaning beyond the traditional understanding of a consumer transaction as embracing the dealings of individuals and their families in matters affecting their personal or household use. If corporations, firms, joint ventures and business trusts are consumers for purposes of FDUTPA, it would also seem at first blush that they are equally entitled to its protections in business dealings, at least when they are themselves acting as consumers. On the other hand, it seems unnecessary to have any definition of consumer transaction if the act was not limited to personal or household dealings. And so, while the plain language of the statute did not appear to require that unfair or deceptive acts necessarily involve a "consumer transaction," that was the understanding reached in several federal cases.[2]See Monsanto Co. v. Campuzano, 206 F.Supp.2d. 1252, 1269 (S.D.Fla.2002) (denying standing to a manufacturer under FDUTPA because it had previously engaged in the business involved, thus holding that the injury could not have arisen out of a consumer transaction); Big Tomato v. Tasty Concepts Inc., 972 F.Supp. 662, 663 (S.D.Fla.1997) (interpreting claim under prior version of statute because cause of action arose before amendment); Bryant Heating & Air Conditioning Corp. Inc. v. Carrier Corp., 597 F.Supp. 1045, 1053 (S.D.Fla.1984) (finding no consumer transaction based on the wording of the statutory definition); LJS Co. v. Marks, 480 F.Supp. 241, 244 (S.D.Fla.1979) (noting that Florida courts strictly construe definition of "consumer transaction").
In 1993, the legislature made some significant changes to FDUTPA. For one, it deleted FDUTPA's definitions of consumer transaction and supplier. See Ch. 93-38, § 2, Laws of Fla. At the same time, the legislature expanded the definition of consumer to add several business entities, including a catch-all "any commercial entity". Id. These changes coincided with an amendment to the statute adding the *278 words "unconscionable acts or practices" to the general proscription. Ch. 93-38, § 3, Laws of Fla.
The logical implication by these definitional deletions is that they were intended to further a purpose of making the state statute at once different by offering some state law protection to purely commercial entities, yet consistent with its federal counterpart in its well established protection of personal, individual household dealings. We therefore conclude that the 1993 amendments to FDUTPA made clear that the statute is not limited to purely consumer transactions. It is now intended by its plain text to apply to any act or practice occurring "in the conduct of any trade or commerce" [e.s.] even as between purely commercial interests. § 501.204, Fla. Stat. (1993).
In this action, PNR used FDUTPA to sue defendants Beacon and Willis for damages. At least two state court decisions  rare events in FDUTPA litigation  have held that business entities may not use FDUTPA for damages actions unless they involve transactions in which the business entity was itself acting as a consumer. See N.G.L. Travel Assoc. v. Celebrity Cruises Inc., 764 So.2d 672 (Fla. 3d DCA 2000); and Warren Tech., Inc. v. Hines Interests Ltd. P'ship, 733 So.2d 1146 (Fla. 3d DCA 1999); see also § 501.211(2), Fla. Stat. (1993) ("In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorney's fees and court costs....").
The critical term in the money damages provision of FDUTPA is that such actions must be brought by a consumer. § 501.211(2), Fla. Stat. (2003). Yet, as we have discovered, the 1993 definition of consumer expressly includes the whole range of business entities. With the deletion of consumer transaction from FDUTPA, it would seem that such business entity consumers could sue for damages from outlawed acts and practices in ordinary business transactions without regard to whether the claimant was acting in the capacity of consuming goods or services. At least, nothing in section 501.211(2) purports to state otherwise.
We need not decide whether the money damages limitation imposed in these state decisions is a correct one,[3] for in this case it is clear that PNR was the consumer of leasing services, while Beacon and Willis were acting in the capacity of a supplier. We thus reject defendants' argument that the judgment is erroneous simply because the facts at trial do not involve a consumer transaction.
Having determined that any deception or unfair practice need not involve purely personal or household dealings in order to establish a duty under FDUTPA and this commercial entity could sue for damages for a violation of FDUTPA, we address the remaining FDUTPA contentions. It is apparent that PNR's FDUTPA claim is grounded in defendants' failure to maintain the premises, resulting in the deficiencies that made operation of plaintiff's restaurant impossible. We see no reason why the kind of conduct by defendants disclosed at trial could not be *279 found by a jury to be both deceptive and unfair. Thus conduct covered by FDUTPA was properly at issue.
Admittedly the contractual duty to maintain the premises rested with Ocean One, the nominal owner and landlord. But the jury could have reasonably concluded that Beacon and Willis assumed the performance of this contractual duty by virtue of their conduct over a period of time. Hence these defendants were subject to liability under FDUTPA just as though they had made the contractual commitment in the first instance to plaintiff to maintain the premises.
It may well be that our interpretation of the amended FDUTPA has the effect of codifying contractual breaches that were formerly remediable only under the common law. The legislature is empowered, however, to do precisely that. It can turn common law claims into statutory claims, and in the process prescribe more or different remedies. In a sense, that is precisely what it appears to have been done with the broad remedial language of FDUTPA. If we are wrong in this interpretation, the legislature is just as empowered to alter the statute again to make a contrary purpose appear.
Accordingly, we affirm the judgment on the jury verdict as regards the FDUTPA claims in all respects. As regards all other issues raised in the former appeal, our original decision stands unchanged. See Beacon Prop. Mgt., Inc. v. PNR, Inc., 785 So.2d 564 (Fla. 4th DCA 2001).
SHAHOOD, J., concurs.
MAY, J., concurs in part and dissents in part with opinion.
MAY, J., concurring in part and dissenting in part.
I concur in the majority's opinion on remand to the extent that a single act of deception is sufficient to satisfy the Florida Deceptive and Unfair Trade Practice Act (FDUTPA). After all, that is precisely the issue addressed in PNR, Inc. v. Beacon Property Management, Inc., 842 So.2d 773 (Fla.2003) ("The only issue we address is whether the FDUTPA may be applied in a private cause of action arising from unfair or deceptive acts involving a single party in a single transaction or directed to a single contract.") I respectfully dissent, however, to the extent that the majority now holds that the transaction in this case, the alleged breach of a commercial lease, satisfies the requirements for a "claim" under FDUTPA. As Justice Wells explained in his dissent in PNR, FDUTPA "is not intended to convert every lease breach into a claim under the Act." Id. at 778 (Wells, J., dissenting).
In this court's original opinion, alternative grounds were given for setting aside the judgment on the FDUTPA claim. See Beacon Prop. Mgmt., Inc. v. PNR, Inc., 785 So.2d 564 (Fla. 4th DCA 2001).
It is apparent that PNR's DUTPA contention is tied to two specific areas of conduct: (1) the failure to maintain the premises, resulting in deficiencies that made operation of the restaurant impossible; and (2) certain representations made to induce PNR's purchase of the restaurant business. The lease required the landlord to maintain the premises. Plainly a failure to make repairs, allowing the premises to deteriorate to the point that code provisions were violated would be a substantial breach of the lease, entitling the tenant to a number of remedies. A breach of the lease covenant to maintain the premises, however, cannot be charged against anyone except the landlord. The effect of a successful DUTPA claim under these circumstances would be to give the tenant a remedy against third parties for a *280 duty that rests with the owner of the premises. Thus, to deem breaches of covenants in commercial leases unfair or deceptive trade acts or practices would be to begin covering many breaches of contract of commercial leases into DUTPA claims. The essence of DUTPA is to condemn "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." We do not read DUTPA to mean that the kind of breaches of commercial leases involved here directly concern consumer protection or Florida's interest in insuring fair methods of competition, not to mention deceptive trade practices. A breach of the covenant to maintain the premises in a commercial lease is not inherently unconscionable or deceptive, and it does not seem to involve "methods of competition" or "trade practice's" affecting competition.
785 So.2d at 567-68. Thus, we originally held that not only the "single" act prevented the FDUTPA claim, but the allegations did not rise to the level of a deceptive trade practice under FDUTPA.
In footnote 2 of the supreme court's opinion, the court reiterated the limited nature of its holding and rejected the dissent's suggestion that the holding resolved the issue of whether the alleged breach of lease constituted an unfair or deceptive act. See PNR, 842 So.2d at 777, n. 2. The court remanded the case to us "for consideration under appropriate law...." Id. Based upon that remand, I would adhere to the alternative holding in the original opinion. The allegations in this case state a cause of action for breach of the commercial lease, but do not rise to the level of a deceptive trade practice.
Our original opinion also reversed the judgments for fraud, negligent misrepresentation, and tortious interference. The majority continues to adhere to its original decision with regard to these claims. I would reverse the judgment on all claims.
NOTES
[1] PNR sued Ocean One, Giacomino, Willis, and Beacon alleging breach of contract, unfair and deceptive trade acts or practices, fraud, negligent representations, tortious interference with contract and wrongful eviction. Ocean One did not appear or defend, and Giacomino settled with PNR before trial. We are here concerned, however, with only the FDUTPA claim against Willis and Beacon decided by the jury.
[2] Any search of judicial decisions under FDUTPA will quickly confirm that federal court decisions preponderate and that state court decisions are far fewer. We treat these federal decisions only as persuasive as their internal logic suggests.
[3] We disagree with the Warren Technology court in one respect, however. That court said: "The former version of the Act did not define `consumer'." 733 So.2d at 1148. In fact FDUTPA did contain a definition of consumer before 1993, one having been adopted in 1979. This difference creates no conflict, however, because the case we decide today involves a damages action by a consumer acting in the capacity of a purchaser of leasing services.