DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STEWART AGENCY, INC.,** d/b/a
**EARL STEWART TOYOTA OF NORTH PALM BEACH,**
Appellant,

v.

**ARRIGO ENTERPRISES, INC.,** d/b/a **ARRIGO DODGE CHRYSLER JEEP RAM WEST PALM BEACH,** and **ARRIGO FT. PIERCE, LLC,** d/b/a **ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE,**
Appellees.

No. 4D18-813

[March 6, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Peter D. Blanc, Judge; L.T. Case No. 502016CA011943XXXXMB-AB.

Jack Scarola of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, and David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota, for appellant.

Kevin F. Richardson and Christopher J. Ryan of Clyatt, Richardson & Ryan, P.A., West Palm Beach, and Scott N. Richardson of the Law Office of Scott N. Richardson, P.A., West Palm Beach, for appellees.

WARNER, J.

Appellant, Stewart Agency, Inc., a car dealership, appeals a final summary judgment in favor of the appellees, Arrigo Enterprises, Inc., and Arrigo Ft. Pierce, LLC, (collectively "Arrigo") in Stewart's claims for both damages and declaratory and injunctive relief against Arrigo for its alleged unfair and deceptive trade practices under the Florida Deceptive and Unfair Trade Practices Act. The court found that there was no evidence to support the element of causation in Stewart's claims both for damages and equitable relief. We agree and affirm.

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-501.213, Florida Statutes (2016), was enacted to protect the public and businesses from unfair trade practices. § 501.202(2), Fla.

Stat. An unfair practice "'offends established public policy' and . . . is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)). Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief, and section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation . . . may recover actual damages . . . ."

Both Stewart and Arrigo are car dealerships which sell new and used vehicles. Stewart is a Toyota dealership in West Palm Beach. Arrigo sells Dodge, Chrysler, Jeep, Ram, and Fiat vehicles in both West Palm Beach and Fort Pierce.

In its complaint, Stewart brought a claim for actual damages, as well as claims for declaratory and injunctive relief under FDUTPA. Stewart alleged that it accepts cars as trade-ins to complete new or used vehicle sales. In 2013, the Japanese airbag supplier, Takata, publicly acknowledged a defect in its airbag inflators that could cause the airbags to deploy in such a way that they released shrapnel. Thus, the Takata airbags installed in vehicles created a risk of serious injury or death to the vehicles' occupants. The National Highway Traffic Safety Administration ordered a regional recall of Takata airbags in Florida, as high humidity increased the risk of improper airbag deployment. While 34 million vehicles in the United States were affected by the recall, only a small percentage of those vehicles had been remediated due to the unavailability of replacement car parts.

Stewart alleged that due to market conditions, it was required to accept vehicles equipped with defective Takata airbags as trade-ins, but it was a deceptive and unfair trade practice to sell such cars to consumers without replacing the defective airbags. Thus, Stewart was forced to store the vehicles with this condition at considerable expense until they could be remediated, during which time the vehicles would lose resale value. This caused Stewart to incur significant business expenses.

Arrigo, a business competitor within the same market area, also accepted used vehicles with Takata-airbag defects. The complaint alleged that Arrigo engaged in deceptive and unfair trade practices by selling those vehicles, for which replacement parts were not available, to consumers and by failing to inform prospective purchasers of the recall. It alleged that Arrigo affirmatively misrepresented the Takata-recall status of the vehicles and the ability to remediate the recalls. In addition, Arrigo engaged in "bait and switch" tactics of inducing prospective customers'

interest in Takata-airbag vehicles by advertising the cars at an attractive price without disclosing the recall, and "then redirecting the potential customer[s'] interest to more expensive cars by discussing the Takata recall issues." Through these deceptive practices, Arrigo was able to make sales that it otherwise would have been unable to make, and it did not incur the expense of storing the vehicles until they could be remediated.

Arrigo answered denying the allegations that it engaged in deceptive practices and asserted affirmative defenses. It argued, among other things, that Stewart's damages were not caused by Arrigo's conduct, as Stewart's decision not to sell the cars with Takata airbags pre-dated any alleged conduct by Arrigo. Arrigo also moved to dismiss Stewart's claim, alleging that Stewart voluntarily decided to accept cars with unremediated Takata airbags and did not have actual damages.

Discovery revealed that Stewart admitted that it had been selling unremediated Takata-airbag vehicles to customers until June 1, 2016, and it stopped doing so after a television reporter interviewed Stewart's representatives. Four months later, Stewart filed suit against Arrigo, and Arrigo stopped the retail sales of the defective vehicles.

In requests for admission, Stewart admitted that Arrigo was not the cause of Stewart's decision not to sell at retail a used car with an unremediated Takata airbag, and it would not sell such vehicles regardless of whether Arrigo sold them. Further, Stewart sold unremediated Takata-airbag vehicles to wholesalers without control or restriction as to how those vehicles were subsequently re-sold. In answers to interrogatories, Stewart stated that it did not know at the time of its answers of any car sales by Arrigo that involved an unfair or deceptive trade practice.

James Arrigo, the owner and president of Arrigo Enterprises, testified in deposition that prior to Stewart filing the lawsuit, his dealership did sell vehicles with unremediated Takata airbags, but this practice was discontinued "shortly after" his dealership was sued by Stewart. Although his dealership did not have a policy of restricting the sale of such vehicles, it did have a policy of identifying any vehicles with recalls or damage. A window sticker on its used, for-sale vehicles identified whether the cars were subject to any recalls, although the sticker did not detail the recalls or indicate if they were Takata-related. Instead, the sticker instructed purchasers to ask for a CARFAX report from the dealer. That report would reveal to a prospective purchaser the specific recalls. Arrigo did not know of any sales where the recall status of the cars was affirmatively misrepresented, nor did his dealership engage in any bait-and-switch tactics described in Stewart's complaint.

Arrigo testified that there were few costs involved in remediating the vehicles with Takata airbags. After the adoption of his policy to stop selling cars with unremediated Takata airbags at retail, he began selling the cars at wholesale, and his business as a whole made more profit.

Relying on Stewart's admissions, Arrigo moved for summary judgment, contending that there was no evidence of any of the three essential elements of a FDUTPA claim for actual damages, including: a deceptive or unfair trade practice; causation; or actual damages to Stewart. As to the declaratory and injunctive relief claims, Stewart was not "aggrieved" by a FDUTPA violation because it decided on its own not to sell unremediated cars, and any injury to Stewart was entirely speculative. Stewart responded, filing the aforementioned deposition of James Arrigo. The trial court granted Arrigo's motion on all counts. It concluded that there was no evidence of causation for either the damages claim or the declaratory and injunctive relief claims. From this judgment, Stewart appeals.

This Court reviews de novo a trial court's decision to grant summary judgment to a party. *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) ("Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law."). The moving party has the burden to show the absence of any genuine issue of material fact, and the court must draw every possible inference in favor of the non-moving party. *Craven v. TRG-Boynton Beach, Ltd.*, 925 So. 2d 476, 479-80 (Fla. 4th DCA 2006). If the movant tenders competent evidence in support of its motion, the burden then shifts to the non-moving party to come forward with opposing evidence. *Id.* at 480.

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-501.213, Florida Statutes (2016), prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." § 501.204(1), Fla. Stat. (2016); *see Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012) (noting FDUTPA protects both the consuming public and legitimate business enterprises from such practices). FDUTPA must be "construed liberally to promote" the policy of "protect[ing] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat. To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Baptist Hosp.*, 84 So. 3d at 1204.

4

As we noted in *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015):

> Our supreme court has defined an "unfair practice" as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or *substantially injurious to consumers.*" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (emphasis added) (citations omitted) (internal quotation marks omitted). Additionally, it has defined "deception" as "a representation, omission, or practice that is likely to mislead the *consumer* acting reasonably in the circumstances, to the *consumer's detriment.*" *Id.* (emphasis added) (citation omitted) (internal quotation marks omitted).

While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer. *Id.*

First, there was no evidence that Arrigo committed an unfair or deceptive trade practice that injured a consumer. In answers to interrogatories, Stewart could not identify any transaction where Arrigo sold a vehicle with a Takata recall notice without disclosing that information to the consumer.[1] Stewart's own admissions provide evidence in support of Arrigo's motion. *See* Fla. R. Civ. P. 1.510(c) (providing parties may rely on "affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence"). Furthermore, James Arrigo's deposition, filed by Stewart, did not create a genuine issue of material fact as to whether Arrigo committed an unfair trade practice that caused Stewart's alleged damages. Because Stewart

---

[1] With respect to the first element of unfair and deceptive trade practice, the evidence shows that Arrigo made customers aware of recalls, but it may not have specifically and affirmatively informed the customer of the Takata airbag recall. Instead, on the window sticker of each vehicle for sale, it informed the customer that there were recalls and that the customer should ask the dealer for a CARFAX report. In Arrigo's motion to dismiss and initial motion for final summary judgment, Arrigo noted that the Federal Trade Commission has never prohibited the sale of vehicles with open recall notices. The commission did not require the disclosure of recalls on vehicles during the time period involved in this suit. *See* 16 CFR §§ 455.1-455.4. As shown in the record, an amendment to those regulations in November 2016 requires that dealers notify consumers that they should check for open recalls on vehicles that they intend to purchase by visiting safecar.gov. Arrigo's reporting that the vehicle is subject to a recall on the window sticker appears to comply with the amended FTC regulations.

did not come forward with counterevidence to create a genuine issue of fact as to this issue, summary judgment was proper. *See Navellier v. Shortz*, 207 So. 3d 287, 288 (Fla. 4th DCA 2016) (finding where party moving for summary judgment comes forward with evidence negating material issue of fact, non-moving party must show the existence of the issue).

Second, the evidence was undisputed that Arrigo's sales of cars with unremediated Takata airbags were not the proximate cause of damages to Stewart. Section 501.211(2), Florida Statutes (emphasis added), provides that, "In any action brought by a person who has suffered a loss *as a result of* a violation of this part, such person may recover actual damages . . . ." Through requests for admission, Stewart admitted that Arrigo was not the cause of its decision to stop selling cars with unremediated airbags at retail, and Stewart would have stopped selling those cars regardless of Arrigo's actions. Furthermore, Stewart conceded that it did not stop selling the unremediated cars until June 2016, after being interviewed by a television reporter, which was only a few months before Stewart sued Arrigo and Arrigo also stopped selling such cars. "[C]ausation [under FDUTPA] must be direct, rather than remote or speculative." *Lombardo v. Johnson & Johnson Consumer Cos., Inc.,* 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (quoting *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012)).[2]

As Stewart's admissions showed that there was no disputed issue of material fact as to both the existence of a violation of the statute and the causation element of the damages claim, the court correctly entered summary judgment on its claim for actual damages.

The court also properly granted summary judgment on Stewart's claims for a declaratory judgment and injunctive relief as to the unfair and deceptive trade practices. Section 501.211(1), Florida Statutes (emphasis added), provides:

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

---

[2] Because state court decisions on FDUTPA claims are rare, this Court looks at the opinions of the United States District Courts for guidance. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 168 (Fla. 4th DCA 2015).

In *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 171 (Fla. 1st DCA 2015), the court noted that the legislature did not define "aggrieved person." The statute provides that "anyone aggrieved" may obtain declaratory or injunctive relief under subsection (1), but "a person" who suffers actual damages may recover for a violation of FDUTPA under subsection (2). *Id.* Because the legislature used different terminology in the different subsections, the court determined that principles of statutory construction dictated that the legislature intended two different meanings. *Id.* at 171-72. The court then looked to Black's Law Dictionary for the definition of "aggrieved": "1. (Of a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights. 2. (Of a person) angry or sad on grounds of perceived unfair treatment." *Id.* at 172. It adopted the second definition, because it concluded that the first definition was "synonymous with damaged or suffered a loss," which would have been the same as those persons who could recover under section 501.211(2). *Id.*

The claimant in *Ahearn*, however, was an individual seeking class standing for other individual consumers asserting claims. Here, Stewart is a business entity, and the Black's Law Dictionary definition utilized by the First District applies only to persons, not entities. While corporations are "persons" under the law, they do not share the characteristics of humans, such as being "angry or sad." Therefore, the definition used by the First District does not apply to corporations. Instead, if we are to use Black's Law Dictionary definitions, the first definition would apply.

The requirement for an entity to show an invasion of legal rights to seek equitable relief under section 501.211(1) is not synonymous with the requirement to show entitlement to actual damages under section 501.211(2), because entities frequently do not suffer actual damages from unfair and deceptive practices of competitors. Instead, their damages are frequently special or consequential damages, and thus, not compensable under section 501.211(2). *See City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (indicating consequential or special damages are not recoverable as "actual damages" under FDUTPA). For instance, in *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 123 So. 3d 1149 (Fla. 5th DCA 2012), the court noted that an entity would be entitled to an injunction to prevent the unauthorized use of trade secret information or to prevent deceptive misrepresentations by a competitor which could create consumer confusion and loss of good will, where actual damages were not shown. *See also Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1116 (S.D. Fla. 2007) (finding that an entity was entitled to an injunction to prevent trademark infringement which

constituted unfair competition that would result in consumer confusion and loss of goodwill).

To obtain a declaratory judgment or injunction, an entity must show that it is "aggrieved by a violation" of FDUTPA. We held in *Caribbean Cruise Line* that although a claimant does not have to be a consumer to state a claim for actual damages under section 501.211(2), to satisfy all of the elements of a FDUTPA claim, it must show that a consumer was injured or suffered a detriment. *Caribbean Cruise Line*, 169 So. 3d at 169. Similarly, here, under section 501.211(1), an entity may bring an equitable claim under FDUTPA, but only if it presents evidence of the required elements. In other words, to state a claim for equitable relief, an entity must show (1) that it is aggrieved, in that its rights have been, are being, or will be adversely affected, by (2) a violation of FDUTPA, meaning an unfair or deceptive practice which is injurious to consumers. Further, "for someone to be aggrieved, the injury claimed to have been suffered cannot be merely speculative." *Ahearn*, 180 So. 3d at 173; *see Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997).

Because Stewart admitted that Arrigo's actions (even if they did constitute unfair practices to consumers) did not cause Stewart to stop selling the unremediated vehicles, Stewart did not show that it was adversely affected, thus it failed to satisfy the first element. In addition, any losses of vehicle sales suffered by Stewart would be entirely speculative and require building an inference upon an inference. As to the second element, there was no evidence that any consumer was injured by any unfair practice, as there was no evidence that Arrigo made any misrepresentations regarding the unremediated vehicles that it may have had on its sales lot.

We therefore affirm the final summary judgment, and agree with the trial court that no disputed issues of fact remain.

*Affirmed.*

DAMOORGIAN and LEVINE, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

8