[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13676
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-20901-JLK

SARAH ALHASSID,

Plaintiff - Appellant,

versus

NATIONSTAR MORTGAGE LLC,
d.b.a. Champion Mortgage,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 8, 2019)

Before MARCUS, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Sarah Alhassid appeals the dismissal of her five-count class action complaint against Nationstar Mortgage LLC ("Nationstar"), the servicer of her reverse mortgage. Alhassid alleges that Nationstar improperly placed flood insurance on

her home and charged her for the premiums, which led to increased financing costs on the mortgage.  The district court dismissed the complaint for failure to state a claim under either the federal Fair Debt Collection Practices Act or Florida consumer protection law.  After careful review, we affirm in part, reverse in part, and remand for further proceedings.

The facts as alleged in the complaint are these.  In 2007, Alhassid took out a reverse mortgage with Seattle Mortgage Company on her condominium unit in Aventura, Florida.  Seattle Mortgage Company transferred the rights to Bank of America, and the servicing rights were transferred to defendant Nationstar in 2012. In a reverse mortgage, a borrower receives a loan, secured by the home, that is paid off when the borrower sells the home, moves out, or dies.  Borrowers are not required to make regular monthly payments.  Over the course of the loan, interest charges and mortgage insurance premiums are applied to the loan balance on a monthly basis and the amount owed by the borrower increases.  When the borrower dies or sells the home, the loan, including these monthly charges, comes due and is typically repaid from the value of the home.

Under the terms of the mortgage at issue, Alhassid was responsible for insuring the property against damage caused by flooding and for paying flood and hazard insurance premiums.  If Alhassid failed to do so, the lender retained the right to "do and pay whatever is necessary to protect the value of the Property and

2

Lender's rights in the Property, including payment of taxes, hazard insurance and other items," including flood insurance. A "Condominium Rider" attached to the mortgage further specifies that if the condo's owners association maintains a "master" or "blanket" policy insuring all units against flood and hazard losses, then the lender "waives the provision . . . for the payment of the premium for hazard insurance on the Property, and . . . [Alhassid's] obligation . . . to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association Policy." In other words, so long as there was a condo association insurance policy covering flood damage to the lender's satisfaction, Alhassid would not have to take out her own policy and the loan servicer could not charge flood insurance premiums to Alhassid's account.

Alhassid alleges that Nationstar, with knowledge that her condo association had flood insurance covering the property, improperly took out a lender-placed flood insurance policy on her property and charged her for the premiums.[1] A total of $5,200 in premiums was added to the balance of her loan, which resulted in a corresponding increase in monthly interest and monthly mortgage insurance premium charges added to the balance. Alhassid claims that this conduct violated

---

[1] In an earlier lawsuit, Alhassid claimed that Nationstar violated the FCCPA and FDCPA by sending her letters requesting proof of flood insurance and informing her that flood insurance was required for the property. The district court dismissed the complaint on the ground that the letters "were not sent in connection with the collection of a debt," and we affirmed. Alhassid v. Nationstar Mortg. LLC, No. 1:16-CV-21211-KMM, 2016 WL 4269867, at *2 (S.D. Fla. Aug. 10, 2016), aff'd, 688 F. App'x 803 (11th Cir. 2017).

3

the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p, the Florida Consumer Collection Protection Act (FCCPA), Fla. Stat. §§ 559.55–559.785, and two provisions of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–501.213. She also seeks to recover for unjust enrichment under Florida law.

The district court granted Nationstar's motion to dismiss for failure to state a claim upon which relief can be granted. The court held that the monthly account statements sent by Nationstar were not "debt collection letters," and therefore they could not lead to a violation of the FDCPA or the FCCPA. The court found that Nationstar was in fact required by federal and Florida law to purchase flood insurance for the property, so that conduct did not violate the FDUTPA. The court dismissed the unjust enrichment claim on the ground that Alhassid's claims were squarely based on her contract with Nationstar, i.e. the reverse mortgage, which precludes an unjust enrichment claim under Florida law.

We review a district court's dismissal of a complaint under Rule 12(b)(6) de novo. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (2016). We take the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

4

Twombly, 550 U.S. 544, 570 (2007)).  A complaint need not contain "detailed factual allegations," Twombly, 550 U.S. at 555, but a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  We are permitted to review documents attached to the complaint, and "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007).  We may affirm a district court's judgment on any ground appearing in the record, even if that ground was not relied on or even considered by the district court.  Powers v. United States, 996 F.2d 1121, 1123-24 (11th Cir. 1993).

We begin with the federal claim.  To state a plausible claim under the FDCPA, a complaint must allege "(1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012).  We apply the "least-sophisticated consumer" standard to evaluate whether a defendant's conduct violates the FDCPA.  LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir. 2010).  A communication must be made "in connection with the collection of any debt" to fall under the FDCPA, though it does not have to contain an express demand for payment.  Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1303 & n.2 (11th Cir. 2014).

Alhassid asserts that Nationstar violated 15 U.S.C. § 1692e's prohibition on "false, deceptive, or misleading representation or means in connection with the collection of any debt" in two ways: first, Nationstar included the improper lender-placed flood insurance premiums in her account statements, and second, Nationstar made other communications representing that Alhassid was required to purchase a flood insurance policy despite the condo association's blanket policy insuring all units against flood and hazard losses. We agree with the district court that Alhassid fails to plausibly allege that the monthly account statements or any other communications were made in connection with the collection of a debt.

As the attachments to the complaint reflect, Alhassid's monthly account statement with the premium charges prominently states "THIS IS NOT A BILL" in bold, uppercase letters. Nowhere does the statement request or demand payment from Alhassid, state an amount that is due, or imply that payment is requested in any other way, since reverse mortgages do not require monthly payments. The inclusion of the boilerplate language that Nationstar "is a debt collector" and "[t]his is an attempt to collect a debt" is not dispositive, especially in light of the nature of the reverse mortgage and the specific information included in the statement. The least-sophisticated consumer standard requires us to ask how a consumer with "a rudimentary amount of information about the world and a willingness to read a [document] with some care" would understand the statement, and it is clear that the

6

monthly account statement about Alhassid's reverse mortgage is not attempting to collect on any debt.  LeBlanc, 601 F.3d at 1194.  It was purely informational, containing no explicit or implicit demand for payment, and therefore cannot be the basis for an FDCPA claim.

In addition, and in any event, Alhassid has failed to plausibly allege that Nationstar is a "debt collector" under the definition of the FDCPA.  Although the complaint does assert that Nationstar is a debt collector, we are not required to accept "mere conclusory statements" in the complaint as true.  Iqbal, 556 U.S. at 678.  The FDCPA provides that the term does not include "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F).  According to the complaint, Nationstar began servicing the mortgage in 2012, and the only alleged default was the result of the lender-placed flood insurance that was not purchased until 2017.  The complaint does not allege that the debt was in default at the time it was obtained by Nationstar, and so Alhassid has not sufficiently pleaded that Nationstar is a debt collector under the FDCPA for the purposes of this claim.  This alternative ground also requires dismissal of the FDCPA claim.

As for Alhassid's second claim, the FCCPA, Florida's analogue to the federal FDCPA, contains substantially similar provisions and courts often analyze them together for that reason.  See Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 839 (11th

Cir. 2010). The FCCPA expressly provides that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act" when construing the Act. Fla. Stat. § 559.77(5). One relevant difference is that the FCCPA applies to any "person" collecting a consumer debt; it is not limited to statutorily defined "debt collectors," like the FDCPA. See Fla. Stat. § 559.72. Still, because Nationstar's communications were not made for the purposes of collecting a debt for the reasons stated above, Alhassid has not plausibly alleged a violation of the FCCPA.

We also affirm the dismissal of Alhassid's claim for unjust enrichment. Her claims, as the district court noted, arise out of a relationship governed by a contract between the two parties. "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008). We are bound by Florida court decisions on issues of Florida law; here, there is undoubtedly an express contract concerning the same subject matter as Alhassid's unjust enrichment claim, so this claim must be dismissed.

Lastly, however, we are unpersuaded by the district court's analysis of Alhassid's FDUTPA claims, at least at this stage in the proceedings. Under the

FDUTPA, a claim for damages has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). The Act applies to "unfair or deceptive acts or practices" in "trade or commerce." Fla. Stat. § 501.204(1). "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any . . . thing of value." Fla. Stat. § 501.203(8). An "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" PNR, Inc. v. Beacon Prop. Mgmt., 842 So. 2d 773, 777 (Fla. 2003) (quoting Samuels v. King Motor Co., 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001)). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Id. at 777. The FDUTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law. Fla. Stat. § 501.212(1).

Here, the district court dismissed Alhassid's FDUTPA claims -- that Nationstar's "improper" placement of lender-placed insurance and its extraction of "improper" interest and mortgage insurance premiums was a deceptive act or unfair practice -- on the ground that Nationstar's purchase of insurance "was required by federal and Florida law." But we disagree. According to the allegations in the

9

complaint, Nationstar "was on notice" that the condo association "had valid flood insurance in place that covered Alhassid's property and that there was no lapse of hazard insurance coverage," that the condo association "maintained the requisite insurance during the relevant period, and that Nationstar "performed no due diligence whatsoever to ascertain" whether force-placed insurance was warranted.

Taking these allegations as true, as we must at this stage, we cannot conclude that the purchase of force-placed insurance was required by state or federal law.

Nationstar has not cited any state or federal law requiring a servicer to purchase flood insurance when it has reason to know that the borrower is maintaining adequate coverage, which is what Alhassid claims Nationstar did in this case. This is unsurprising, since no state or federal statute, as best as we can tell, compels a servicer to purchase force-placed flood insurance when doing so would be unnecessary or duplicative. In fact, in the analogous context of hazard insurance, federal law expressly prohibits the purchase of force-placed insurance "unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." 12 U.S.C. § 2605(k(1)(A). As pleaded in the complaint, Nationstar's knew or should have known that Alhassid's home was covered by the condo association's flood insurance policy. Because we cannot conclude that the purchase of force-placed insurance is

10

required by state or federal law when a home is already covered, we reverse the

district court's dismissal of her FDUTPA claims on this ground.[2]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[3]

---

[2] We express no view on whether Alhassid's FDUTPA claims fall outside the ambit of FDUTPA for other reasons, following "the general rule . . . that a federal appellate court does not consider an issue not passed upon below." Clark v. Coats & Clark, Inc., 929 F.2d 604, 609 (11th Cir. 1991) (quoting Singleton v. Wulff, 428 U.S. 106, 120 (1976)).  On remand, the district court can address in the first instance whether, for example, Alhassid has adequately pleaded "unfair or deceptive acts or practices" in "trade or commerce."  See, e.g., Martorella v. Deutsche Bank Nat. Tr. Co., 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013); Williams v. Nationwide Credit, Inc., 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012); PNR, Inc., 842 So. 2d at 777, n.2.

[3] The district court denied leave to amend the complaint, having dismissed each of Alhassid's claims.  Since we reverse as to her FDUTPA claims, we leave it for the district court to consider whether Alhassid may be permitted leave to amend the complaint as to the FDUTPA claims on remand.

11