NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SOLAR DYNAMICS, INC.,                    )
                                         )
            Appellant,                   )
                                         )
v.                                       )          Case No. 2D15-5728
                                         )
BUCHANAN INGERSOLL & ROONEY,             )
P.C., and CHRISTOPHER E.                 )
PARADIES,                                )
                                         )
            Appellees.                   )
_____)

Opinion filed February 8, 2017.

Appeal from the Circuit Court for Sarasota
County; Rochelle Curley, Judge.

Roger L. Young of the Law Office of Roger
L. Young, P.A., Sarasota, for Appellant

Mark D. Tinker, Frank H. Gassler, and
Scott S. Amitrano of Banker Lopez Gassler,
P.A., St. Petersburg; and Hala A. Sandridge
of Buchanan Ingersoll & Rooney, P.C.,
Tampa, for Appellees


LaROSE, Judge.

            Solar Dynamics, Inc. (Solar), appeals the trial court's order dismissing,

without prejudice, its legal malpractice action against Buchanan Ingersoll & Rooney,

P.C. (Buchanan), and Christopher E. Paradies.[1]  We have jurisdiction.  <u>See</u> Fla. R. App. P. 9.030(b)(1)(A).  After careful review of the record, and with the benefit of oral argument, we affirm.

Introduction

Solar hired Buchanan and Mr. Paradies to seek a patent for Solar's fastening shade system for playground structures.[2]  Allegedly, the issued patent was inadequate to protect Solar's idea and design from infringement by competitors.  In response to Solar's legal malpractice lawsuit, Buchanan and Mr. Paradies moved to dismiss the complaint.  The trial court granted the motion and dismissed the case, concluding that it lacked subject matter jurisdiction.[3]  <u>See</u> 28 U.S.C. § 1338(a) (2015) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . .").

Solar argues that the trial court erred.  According to Solar, the malpractice claim is a pure state law matter that does not raise a substantial question of federal law. Buchanan and Mr. Paradies insist otherwise.  They contend that before any malpractice claim can proceed, a federal court must necessarily decide the scope, validity, or

---

[1]At all times pertinent to the allegations in Solar's complaint, Mr. Paradies was a shareholder at Fowler White Boggs, P.A., which later merged with Buchanan before Solar filed its complaint.

[2]Solar's fastening shade system consists of a demountable wind-resistant canopy "removably secured over a support structure" and "comprised of hip beams supported by columns mounted on the support structure" in which the "hip beams extend upwardly and inwardly toward an apex."  U.S. Patent No. 7,316,237 (filed Apr. 27, 2006).

[3]The trial court did not address Buchanan's and Mr. Paradies' alternative theories that the cause of action was not ripe or was time-barred.

infringement of the patent. Those determinations, they tell us, can only be made in an action by Solar in federal court against an alleged patent infringer. See 35 U.S.C. § 271 (2015) (creating a cause of action for patent infringement). Only against that tableau, they say, can a state court determine whether the lawyers committed malpractice that caused Solar damage. As we will see, Buchanan and Mr. Paradies have the better argument. The trial court correctly found that it lacked subject matter jurisdiction.

Background[4]

Solar retained Mr. Paradies in the spring of 2006 to obtain a patent for its fastening shade system. The United States Patent and Trademark Office issued a patent, '237 Patent, in January 2008. Shortly thereafter, Solar began negotiations with another company, Playcore, concerning the grant of an exclusive license for Playcore to use, or practice, the patented invention. By the summer of 2008, negotiations stalled. Playcore objected to a proposed license agreement prepared by Mr. Paradies, claiming that the patent was "too weak." Playcore proceeded to design and market its own shading system.

After learning that other companies also were selling a similar shade system, Solar sought further legal advice from Duane A. Stewart, III, another Buchanan lawyer. Mr. Stewart advised that "the patent that [Buchanan and Mr. Paradies] had obtained for [Solar] had failed to adequately protect the company's idea and function, and that the patent provided no protection."

---

[4]The facts relevant for this appeal are taken from Solar's complaint and deemed to be true. See Fla. Bar v. Greene, 926 So. 2d 1195, 1199 (Fla. 2006) ("For the purposes of a motion to dismiss . . . allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff." (quoting Ralph v. City of Daytona Beach, 471 So. 2d 1, 2 (Fla. 1983))).

Without first filing a federal patent infringement suit against any of its competitors, Solar sued Buchanan and Mr. Paradies in state court. They alleged that Buchanan and Mr. Paradies "were negligent in failing to protect [Solar's] idea and design from infringement, and by failing to properly patent the fastening system." After the trial court dismissed the case, this appeal ensued.

## Standard of Review

"[T]he issue of whether a court has subject matter jurisdiction involves a question of law that is reviewed de novo." Nissen v. Cortez Moreno, 10 So. 3d 1110, 1111 (Fla. 3d DCA 2009) (citing Sanchez v. Fernandez, 915 So. 2d 192 (Fla. 4th DCA 2005)); see also Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd., 752 So. 2d 582, 584 (Fla. 2000) ("A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review.").

## Analysis

This case involves the confluence of federal and state law. Specifically, we must determine whether a Florida trial court has subject matter jurisdiction to decide, vel non, issues related to a patent's scope, validity, or infringement; the resolution of such issues necessarily would form the basis for a legal malpractice action.

The United States Constitution empowers Congress to enact laws relating to patents in order to "promote the Progress of . . . useful Arts." Art. I, § 8, cl. 8, U.S. Const. Indisputably, federal courts exercise exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents." § 1338(a); see 28 U.S.C. § 1295(a)(1) (2015) (providing that the United States Court of Appeals for the Federal Circuit possesses exclusive jurisdiction "of an appeal from a final decision of a district

- 4 -

court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents").  And yet, that jurisdiction does not necessarily extend to "all questions in which a patent may be the subject-matter of the controversy."  New Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 473, 478 (1912).  Finding the line of demarcation, however, is bedeviling.  In framing the contours of the "slim category" of cases in which a legal malpractice claim confers § 1338 "arising under" jurisdiction, the jurisprudence resembles a "canvas [that] looks like one that Jackson Pollock got to first."[5]  Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013).

The parties before us rely heavily on Gunn, a legal malpractice claim involving a patent.  Of course, each side draws a different conclusion as to how Gunn applies.  We are not convinced, however, that Gunn is dispositive.  The underlying facts of Gunn are simple.  Gunn represented Minton in a federal court patent infringement suit.  The federal court ultimately found Minton's patent invalid.  Id. at 1062.  Minton then sued Gunn for legal malpractice in a Texas state court.  Allegedly, Gunn's failure to raise a particular argument cost Minton the lawsuit, and his patent.  Id. at 1063.  The Texas trial court rejected Minton's argument.  On appeal, Minton argued that his legal malpractice claim was based on an alleged error in a patent case; thus, only a federal district court had exclusive jurisdiction over the action under § 1338(a).  The intermediate appellate court affirmed.  But the Texas Supreme Court reversed, concluding that the case belonged in federal court because the success of Minton's

---

[5]Jackson Pollock, a well-known abstract expressionist, pioneered the "drip" technique, in which paint is dripped from sticks, trowels, and knives onto a canvas tacked to a wall or floor.  See Jackson Pollock and His Paintings, Jackson Pollock Biography, Paintings, and Quotes, http://www.jackson-pollock.org (last visited November 28, 2016).

malpractice claim relied upon a question of federal patent law. The United States Supreme Court reversed, holding that Minton's state law legal malpractice claim did not "arise under" federal patent law, and, thus, § 1338(a) did not deprive the state court of subject matter jurisdiction over the lawsuit.[6] Id. at 1065.

In deciding whether a federal court must decide a state law legal malpractice claim involving a patent, the Court relied on the test it announced in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005). Id. The Court observed that federal jurisdiction over such a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Id. (citing Grable, 545 U.S. at 314). Given Solar's allegations, if Gunn is our guide, as the parties urge, we conclude that prongs one and two are easily satisfied here. Only prongs three and four, the parties tell us, are relevant in the case before us.

We acknowledge that, generally, in the context of a legal malpractice claim, even if a state court must address patent issues, nothing the state court decides will necessarily set a precedent or affect patent law as a whole. That is because in the "case within a case" framework of legal malpractice claims, an adverse legal determination has already been made against the malpractice plaintiff. Thus, on the record before it, the Supreme Court noted in Gunn that "there is no 'serious federal interest in claiming the advantages thought to be inherent in a federal forum.' " Id. at

_____

[6]We do not understand Buchanan and Mr. Paradies to argue that Solar's malpractice claim belongs in federal court. Rather, they urge that any malpractice claim must await an adverse result for Solar in a federal patent infringement suit.

- 6 -

1068 (quoting Grable, 545 U.S. at 313). Whatever happened in Minton's lawsuit against Gunn, Minton's patent was, and would continue to be, invalid. Id. at 1067. Apparently, under such circumstances, the Court was reluctant to federalize run-of-the-mill state legal malpractice claims. On the other hand, we must also recognize that questions of a patent's scope, validity, or infringement are quintessential federal issues arising under federal patent laws. Id. at 1064.

Solar contends that Gunn compels a state court to exercise subject matter jurisdiction over a legal malpractice claim, even though the underlying claim involves patent issues. State courts, in the first instance, are certainly suited to assess the standard of care owed by lawyers to their clients. See id. at 1064 (observing that "indisputably" Minton's legal malpractice claim "f[ound] its origins in state rather than federal law"). Typically, in a patent-related malpractice claim, resolution of patent issues are incidental to the core issues of duty, causation, and damages. And, as Gunn observed, the patent matter has already been decided adversely to the malpractice plaintiff. For several reasons, however, we conclude that Gunn does not reach as far as Solar would hope.

Notably, unlike Gunn, we are not faced with the question of whether Solar's legal malpractice claim belongs in federal court. See n.6, supra. Under Gunn, for a typical "case within a case" claim of malpractice, a state court is competent to proceed. Certainly, Gunn rejected the notion that Congress intended to move all state legal malpractice claims related to patents into federal court. Yet, it does not necessarily follow that state courts, in the first instance, have jurisdiction to decide core issues of patent law. After all, Gunn involved a legal malpractice claim that followed on

the heels of an unsuccessful federal patent infringement suit. Minton's legal malpractice action stemmed directly from that suit. Recall that Minton claimed that Gunn committed malpractice by not raising an argument in a federal case concerning the patent's validity. That alleged failure created the "case" that a state trial court could address in the subsequent legal malpractice case.

In contrast, by proceeding directly with a malpractice case, Solar effectively asks the state trial court to rule in the first instance upon the scope, validity, or infringement of its patent. As framed, Solar's complaint for malpractice necessarily requires a decision in the state court that the patent was inadequate to protect Solar from infringement by competitors. Solar avoids a critical step; it fails to create the first "case" needed to provide the context for a subsequent legal malpractice claim. And the unfortunate result for federal oversight of patent law, if Solar is correct, is that a state court will make core decisions related to a federally-issued patent. Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, 1570 (2016) (stating that under Grable, federal courts "typically" have jurisdiction over a state law claim where "a state-law cause of action is 'brought to enforce' a duty created [under federal law] because the claim's very success depends on giving effect to a federal requirement").

The omission of a first case of infringement is particularly critical to how Gunn applies here. In assessing the substantiality prong of the Grable test, the Supreme Court observed that the "federal [patent] issue carries no . . . significance" to the federal system as a whole. 133 S. Ct. at 1066. It bears repeating that the Court reasoned in Gunn that no matter how the state court resolved the malpractice case, the result of the prior federal patent litigation would not change. Id. The "backward-looking

nature of a legal malpractice claim," id. at 1066-67, is completely absent under Solar's theory. Gunn involved a prior determination that Minton's patent was invalid. Solar presents no such prior determination. See id. at 1067 ("No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation. Minton's patent will remain invalid." (emphasis added)). Solar presents no "backward-looking" claim. Solar wants a state court, in the first instance, to entangle itself with core concepts of patent law that will ultimately define the merits of its legal malpractice claim. See, e.g., Larson & Larson, P.A. v. TSE Indus., Inc., 22 So. 3d 36, 38 (Fla. 2009) (recounting the procedural history in which TSE brought a state legal malpractice suit against Larson & Larson following a federal court's determination that TSE's patent was invalid).

As noted earlier, federal district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to patents." § 1338(a). Gunn explained that "Minton's original patent infringement suit . . . arose under federal law . . . because it was authorized by 35 U.S.C. §§ 271, 281." Gunn, 133 S. Ct. at 1064; see also 35 U.S.C. § 282(a) (providing that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity"); Schachel v. Closet Concepts, Inc., 405 So. 2d 487, 489 (Fla. 3d DCA 1981) (Ferguson, J., specially concurring) ("Because, however, the issue of patent validity involves a right which arises under federal law, determination of which was necessary for resolution of the breach of contract issue, jurisdiction lies exclusively in the federal court.").

In assuaging concerns that state courts' case-within-a-case patent rulings would impede development of a uniform body of patent law, Gunn noted that federal

- 9 -

courts are not bound by such "hypothetical" state court rulings; federal courts possess "exclusive jurisdiction over actual patent cases." Gunn, 133 S. Ct. at 1067. But, Solar's complaint presents no "hypothetical" musing. Before reaching the merits of any malpractice claim, the state trial court will have to construe the claims of the Solar patent, and then assess whether the products of Playcore or any other competitor infringe the patent. These decisions will mark the merits of the malpractice claim. When we look at the proper allocation of authority to address core patent issues, it is readily apparent why Gunn was decided as it was. In Gunn, the issue of patent validity was already decided by a federal court. What remained was a determination by a state court as to whether Minton's unfortunate result was caused by Gunn's malpractice, performing below the appropriate standard of care. Only after deciding these core issues could the state trial court assess the merits of the malpractice claim.

Jurisdiction under § 1338(a) applies to all cases in which federal patent law creates the cause of action. Therefore, whether a claim arises under patent law must be determined from what appears in Solar's complaint. Cf. Boca Burger, Inc. v. Forum, 912 So. 2d 561, 568-69 (Fla. 2005) ("[W]hen a defendant asserts [a lack of subject matter] defense in a motion to dismiss, a trial court must determine the issue as a matter of law based only on the well-pleaded allegations in the complaint, assuming the truth of the facts asserted."). Although Solar's complaint is carefully couched as a matter of legal malpractice, the complaint necessarily invites the trial court to make initial determinations as to the patent's scope, validity, or infringement. These issues are best decided in a federal court lawsuit between Solar and an alleged infringer. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988) (holding that §

1338(a) jurisdiction inures when a complaint establishes that "federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims").

We think Schachel, 405 So. 2d at 487-88, offers prudent guidance in assessing the parties' arguments.  There, the patent owner and his exclusive licensee sued an alleged patent infringer in state court, claiming that the infringer breached a settlement agreement reached in earlier federal litigation.  The trial court dismissed the action for lack of subject matter jurisdiction.  On appeal, the Third District announced the following test:

> [I]f the suit is founded on a breach of a right created by the patent laws, even if that right is confirmed by separate agreement, the case arises under the patent laws, and a state court is without subject matter jurisdiction.  On the other hand, if the suit is founded on some right falling outside the ambit of the patent laws, then the state court has jurisdiction, even if during the course of the suit the court is called upon to determine questions involving the patent laws.

Id. at 488.  Applying this test, the Third District noted that "the only possible way for Closet Concepts to breach the agreement would be to infringe the patent."  Id.  Because the settlement agreement neither modified nor added to any right already existent "by virtue of the patent laws . . . the complaint alleges nothing other than an action against Closet Concepts for infringement of patent rights" where the patent's validity and infringement "[w]as the central and sole issue."  Id.; cf. Jacobs Wind Elec. Co. v. Dep't of Transp., 626 So. 2d 1333, 1335 (Fla. 1993) ("[P]reemption does not bar state jurisdiction when the complaint relies on 'reasons completely unrelated to the provisions

- 11 -

or purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks.' " (alterations in original) (quoting Christianson, 486 U.S. at 808-09)).

Similarly, for the trial court to find that Buchanan and Mr. Paradies committed legal malpractice, Solar must show, first, that the patent was invalid or that its scope was not sufficiently broad to protect Solar from its allegedly infringing competitors.  Resolution of a federal patent question, in the first instance, is necessary for Solar's legal malpractice case to survive.  Cf. Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp., 969 So. 2d 962, 966 (Fla. 2007) ("A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." (quoting Sec. Nat'l Servicing Corp. v. Law Office of David J. Stern, P.A., 916 So. 2d 934, 936-37 (Fla. 4th DCA 2005))).[7]

We do not dispute that Gunn expresses solicitude for federalism.  133 S. Ct. at 1067.  Yet, we cannot ignore that Solar's position, if successful, potentially will disrupt federal oversight of patent law.  Under Solar's theory, a state court would be free to rule upon a patent's scope, validity, or infringement, in the first instance, in a legal malpractice claim.  Rather than testing the strength of its patent against an alleged infringer in federal court, Solar attempts to recast such federal issues as legal malpractice claims by attacking the lawyer's performance.  Although under Solar's

---

[7]Because Solar has pursued no federal court action addressing scope, validity, or infringement, its patent remains presumptively valid.  See § 282(a) ("A patent shall be presumed valid."); R. Regulating Fla. Bar 6-26.2(b) ("The grant of a patent by the [United States Patent and Trademark Office] carries with it the presumption of validity . . . .").

regime, the lawyers are possibly on the hook, Solar avoids any risk that its patent will be found invalid or not infringed by a competitor. Solar would skirt federal oversight of its patent. As a broader policy issue, recasting patent issues as malpractice claims poses a risk that otherwise invalid patents will remain inviolate. See § 282(a); R. Regulating Fla. Bar 6-26.2(b). Resting the resolution of core patent issues in a state court disrupts the balance between state and federal courts anticipated by Congress for patent matters. Gunn, 133 S. Ct. at 1067 ("Congress ensured [uniformity in patent law] by vesting exclusive jurisdiction over actual patent cases in the federal district courts and exclusive appellate jurisdiction in the Federal Circuit."). Because Gunn involved a prior federal court determination of patent invalidity, Gunn presented no real federalism concern.

### Conclusion

Solar is not foreclosed from having its day in court. The trial court dismissed the case, without prejudice, anticipating that Solar could pursue an infringement action in federal court. A ruling in that appropriate forum could well tee-up the necessary "case within a case" properly addressed to a state court. We cannot countenance Solar's efforts to invoke a state court ruling on core federal issues relating to the scope, validity, or infringement of its patent.

Affirmed.


CASANUEVA and MORRIS, JJ., Concur.