DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**POINT CONVERSIONS, LLC,**
Appellant,

v.

**WPB HOTEL PARTNERS, LLC,**
Appellee.

No. 4D19-3017

[June 2, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 502019CA002264XXXXMB.

Nancy W. Gregoire of Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, and Kenneth W. Ferguson of Ferguson Law P.A., Fort Lauderdale, for appellant.

Matthew R. Chait, Joseph W. Bain, and Sean M. Smith of Shutts & Bowen LLP, West Palm Beach, Daniel E. Nordby of Shutts & Bowen LLP, Tallahassee, and Garrett A. Tozier of Shutts & Bowen LLP, Tampa, for appellee.

**ON APPELLEE'S MOTION FOR REHEARING OR CLARIFICATION**

KLINGENSMITH, J.

We grant appellee's motion for rehearing and clarification in part, withdraw our previously issued opinion, and substitute the following in its place.

Point Conversions, LLC ("appellant"), a software development company, appeals the trial court's final order dismissing its Complaint against WPB Hotel Partners, LLC ("appellee"), an independently owned franchisee of a hotel chain, for lack of subject matter jurisdiction on the authority of *Solar Dynamics, Inc. v. Buchanan Ingersoll & Rooney, P.C.*, 211 So. 3d 294 (Fla. 2d DCA 2017). Because we believe this case is controlled by precedent established by the United States Supreme Court rather than the Second District's opinion, we reverse.

In September 2017, appellant entered into an agreement allowing it to acquire an exclusive license to a third party's patents which it then used to create software called Point Boundaries. The agreement between appellant and the patent owner provides that appellant "acquires an exclusive, non-transferrable … right to develop and use the Software within the scope of the Existing Patents."

1

The agreement also states that appellant's software "shall be the only software possessing the usage right under the Existing patents." In the agreement, the patent owner denied appellant the "right to sue for infringement of the existing patents," but acknowledged that appellant retained "all right, title and interest, including Intellectual Property Rights" in and to its own software.

The Point Boundaries software facilitates the exchange of loyalty or reward points between separate business entities or cross-channels. For instance, if an individual receives reward points for flying with a particular airline, the Point Boundaries software enables them to use those points at different businesses. While appellee offers its customers loyalty reward points for staying at its hotel, it directs its customers to use software other than Point Boundaries to transfer those earned points.

Appellant filed a Complaint against appellee in the Fifteenth Judicial Circuit[1] with the following common allegations: its rights under its exclusive license with the patent owner, its development of the Point Boundaries software, appellee's knowledge of appellant's rights to the Point Boundaries software, appellee's violation of those rights, and finally, the benefits appellee was receiving due to the aforementioned violations. After reciting these common allegations, appellant's Complaint stated four separate causes of action against appellee: (1) unjust enrichment for benefiting from its patrons' use of software that violates appellant's exclusive license; (2) temporary and or permanent injunctive relief to enjoin appellee's violations of its exclusive rights; (3) conversion by way of receiving illicit compensation for the unauthorized use of its software; and (4) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

Appellee did not file an answer to the Complaint, but instead filed a motion to dismiss alleging a lack of subject matter jurisdiction. Although appellant's Complaint alleged state law claims, appellee's motion argued that the trial court lacked subject matter jurisdiction because the claims were in essence "patent infringement claims disguised as state law claims." According to appellee, the claims in the Complaint were patent law claims because they were "founded on a breach of a right created by the patent laws." As such, appellee argued that it required a "determination of the core patent issues reserved exclusively to the jurisdiction of federal courts under 28 U.S.C. § 1338(a)."

The trial court held a hearing on the jurisdictional question. At the hearing, appellee relied primarily on the Second District's *Solar Dynamics* case to support its motion to dismiss. Appellee also claimed a hearing was required—but only before a federal court—where the patents involved could be construed to determine whether its conduct, as alleged by appellant, fell under those patents.

---

[1] Appellant also filed forty-six similar complaints against other franchisees in seven counties around the state.

In opposition to the motion, appellant claimed that the proper test to determine the trial court's subject matter jurisdiction under patent law was the four-part test utilized in *Gunn v. Minton*, 568 U.S. 251 (2013). Under this test, a court must determine whether the federal issue was: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 259. Although appellant agreed that its unjust enrichment, conversion, and injunctive relief claims would necessarily entail an evaluation of patent infringement issues, it still argued that appellee could not meet all facets of the *Gunn* test and therefore the trial court could exercise jurisdiction over its claims. Further, appellant argued that deciding the jurisdictional issue at this stage was premature because its claims could not be truly evaluated under this four-part test until an answer to the Complaint was filed. Without an answer, it would not be able to know whether any of the patent issues were "actually disputed."

After hearing both parties' arguments, the trial court entered a final order granting appellee's motion to dismiss. In the order, the trial court opined that it did not have subject matter jurisdiction because the claims "necessarily require[d] a determination of the scope, validity or infringement of a patent." This appeal followed.

"Whether a court has subject matter jurisdiction is a question of law reviewed de novo." *Sanchez v. Fernandez*, 915 So. 2d 192, 192 (Fla. 4th DCA 2005). "Subject matter jurisdiction means 'the power of the court to adjudicate the class of cases to which the particular case belongs.'" *VL Orlando Bldg. Corp. v. AGD Hosp. Design & Purchasing, Inc.*, 762 So. 2d 956, 957 (Fla. 4th DCA 2000) (citation omitted).

However, Congress has granted federal district courts original jurisdiction over "any civil action arising under any Act of Congress relating to patents . . . [and] copyrights." 28 U.S.C. § 1338(a). This original jurisdiction for issues related to patents and copyrights also functions as exclusive jurisdiction as Congress has stated that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . or copyrights." *Id.* Thus, the key to determining whether a case involving a patent or copyright falls within the federal district court's exclusive jurisdiction is to determine whether the case "aris[es] under any Act of Congress relating to patents" or copyrights. *Gunn*, 568 U.S. at 257 (quoting 28 U.S.C. § 1338(a)).

"[A] case can 'aris[e] under' federal law in two ways": (1) "when federal law creates the cause of action asserted" or (2) when a state law claim meets four factors. *Id.* at 257-58. These four factors, first articulated in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), ask whether the federal issues within that state law claim are: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court

without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988). The state law claims within the plaintiff's complaint must meet all four of these factors for federal jurisdiction to lie. *Gunn*, 568 U.S. at 258.

A federal issue or question is "substantial in the relevant sense" when "a state court's resolution of the federal question 'would be controlling in numerous other cases.'" *Id.* at 260, 262 (citation omitted). Allowing a state court to resolve controlling federal questions, particularly when they involve complex issues, would "undermine 'the development of a uniform body of [] law.'" *Id.* at 261 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). Thus, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260.

In *Gunn*, the question presented was whether a legal malpractice claim involving a patent issue had to be adjudicated in federal court. *Id.* at 253. There, Minton filed an unsuccessful patent infringement action against several defendants in federal district court; the court granted summary judgment for the defendants and declared Minton's patent invalid. *Id.* at 254. Afterwards, Minton filed a legal malpractice action in Texas state court against the attorneys who represented him in the patent case. *Id.* at 255. Minton lost his malpractice case at the trial court level and appealed, arguing that the trial court's order should be vacated because the state court lacked the subject matter jurisdiction to decide the malpractice case, as it involved a patent issue. *Id.* The case was appealed to the Supreme Court of Texas, which concluded that Minton's malpractice claim involved "'a substantial federal issue' within the meaning of *Grable*" thus triggering section 1338 "arising under" jurisdiction in federal court. *Id.* at 256.

Taking the case on certiorari jurisdiction, the United States Supreme Court unanimously reversed the Texas Supreme Court's ruling, opining that Minton's legal malpractice claim did not need to be adjudicated in federal court. *Id.* at 258. Chief Justice Roberts, writing for the Court, applied *Grable*'s four-part test and found that the malpractice claim did not arise under federal patent law for purposes of section 1338. *Id.*

The *Gunn* Court conceded that it would be "necessary" for a state court to resolve a federal patent issue when deciding Minton's case and acknowledged that the patent issue was "actually disputed" by both Minton and the attorney defendants. *Id.* at 259. But, according to the Court, the federal issue in Minton's state law malpractice claim was "not substantial in the relevant sense" because nothing would change the result of the prior federal patent litigation that invalidated his patent. *Id.* at 260-61. Any subsequent state court decision regarding the patent issue would be part of a "case within a case" and would not bind federal courts. *Id.* at 262. Finally, because the patent issue in Minton's

4

state law malpractice claim was not "substantial," the Court found that deciding it in state court would "disrupt[] the federal-state balance approved by Congress." *Id.* at 258, 264.

After the *Gunn* decision, the Second District was presented with a similar factual scenario in *Solar Dynamics*, involving whether a state court had subject matter jurisdiction to handle a legal malpractice claim involving a patent. 211 So. 3d at 295-96. However, unlike the United States Supreme Court in *Gunn*, the Second District concluded that the state court did not have jurisdiction over the claim. *Id.* at 296. In that case, Solar Dynamics retained an attorney to obtain a patent for a product it created. *Id.* It was later determined that the patent obtained by the attorney failed to adequately protect Solar Dynamics' product idea. *Id.* After learning this, Solar Dynamics filed a legal malpractice action against the attorney in state court. *Id.* The attorney filed a motion to dismiss the suit, alleging that the state trial court lacked subject matter jurisdiction over the claims. *Id.* The trial court agreed and dismissed Solar Dynamics' suit. *Id.*

On appeal, Solar Dynamics contended that the decision in *Gunn* compelled the trial court to exercise jurisdiction over its legal malpractice claim even though the claim involved patent issues. *Id.* at 298. However, the Second District disagreed and affirmed the trial court's dismissal for lack of subject matter jurisdiction. *Id.* at 296. According to the Second District, *Gunn* did not "reach as far as Solar [Dynamics] would hope." *Id.* at 298. It noted that in *Gunn*, there had been a prior federal case filed addressing the patent's validity before the state court legal malpractice case was initiated. *Id.* In contrast, the Second District recounted that Solar Dynamics "proceed[ed] directly with a state malpractice case," not a federal action, which required the state trial court to "rule in the first instance upon the scope, validity, or infringement of its patent." *Id.* In other words, "[b]efore reaching the merits of any malpractice claim, the state trial court w[ould] have to construe the claims of the Solar patent, and then assess whether the products of . . . any other competitor infringe the patent." *Id.* at 299. To the Second District, these were "quintessential federal issues" that would be "best decided in a federal court lawsuit between Solar [Dynamics] and an alleged infringer." *Id.* at 298, 300.

After the Second District concluded that *Gunn*—and the four-part test therein—was not dispositive of the case, it utilized the following test from *Schachel v. Closet Concepts, Inc.*, 405 So. 2d 487 (Fla. 3d DCA 1981):

> [I]f the suit is founded on a breach of a right created by the patent laws, even if that right is confirmed by separate agreement, the case arises under the patent laws, and a state court is without subject matter jurisdiction. On the other hand, if the suit is founded on some right falling outside the ambit of the patent laws, then the state

5

court has jurisdiction, even if during the course of the suit the court is called upon to determine questions involving the patent laws.

*Solar Dynamics*, 211 So. 3d at 300 (quoting *Schachel*, 405 So. 2d at 488). Applying this test, the Second District held that the patent issues were central to the dispute, and that Solar Dynamics' legal malpractice claim arose under the patent laws. *Id.* at 300-01. The court came to this conclusion after noting, again, that the only way for Solar Dynamics to prove its legal malpractice claim was to show that its "patent was invalid or that its scope was not sufficiently broad to protect Solar from its allegedly infringing competitors." *Id.*

Against the backdrop of these two cases, we must determine whether the trial court has subject matter jurisdiction over appellant's case. Because appellant's case concerns a patent, when determining jurisdiction we must consider whether the case "aris[es] under any Act of Congress relating to patents [or copyrights]." *Gunn*, 568 U.S. at 257. If the case indeed "arises under" federal law, it falls under the exclusive jurisdiction of the federal district court—meaning the Fifteenth Judicial Circuit would not have jurisdiction to hear it. *See* 28 U.S.C. § 1338(a). Conversely, if the case does not "arise under" federal law, jurisdiction would be proper in the state trial court. A case can "arise under" federal law when federal law creates the cause of action asserted or the state law claim meets *Gunn*'s four enumerated factors. *See Gunn*, 568 U.S. at 258.

Here, it is clear that none of appellant's claims are created by federal law. *See id.* This conclusion is evident because the Complaint filed herein "is entirely devoted to state law causes of action." *ClearPlay, Inc. v. Abecassis*, 602 F.3d 1364, 1367 (Fed. Cir. 2010). Thus, for a federal court to have exclusive jurisdiction over appellant's proffered state law claims, those claims must meet all four *Gunn* factors. *See Gunn,* 568 U.S. at 258. We now consider each jurisdictional prerequisite as applied to this case.

**A. Whether appellant's state law claims necessarily raise an issue of federal law**

*Gunn*'s first factor asks whether a federal issue is "necessarily raised" in the claim. *See id.* "[A] patent law issue will be necessarily raised only if it is a necessary element of one of the well-pleaded claims." *NeuroRepair, Inc. v. The Nath Law Group*, 781 F.3d 1340, 1344 (Fed. Cir. 2015). Appellant brought its four claims using causes of action which "find[ ] [their] origins in state rather than federal law." *Gunn*, 568 U.S. at 258. Because appellant brought separate state law claims, each of those claims must be evaluated to see whether jurisdiction lies in federal court. *See Ragner Tech. Corp. v. Berardi*, No. 9:20-CV-80020, 2020 WL 1244863, at *3-4 (S.D. Fla. Mar. 16, 2020) (evaluating the elements of the plaintiff's fraudulent misrepresentation and breach of contract claims to see if patent law issues were a necessary element of those claims).

6

## Count 1. Unjust Enrichment

The elements of an unjust enrichment claim are:

> 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

*Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006).

Using this rubric to determine whether appellant's unjust enrichment claim raises an issue of federal law, both the patent and the licensing agreement between appellant and the patent owner must be examined. According to the licensing agreement, appellant had the exclusive right to develop and use software created under the owner's "Existing Patents." Further confirming this exclusivity, the agreement stated that the software appellant developed would be the only software that possessed the right to use the owner's "Existing Patents." Notably, however, the owner *did not* grant appellant the right to sue for infringement of its patents. Appellant was aware it could not sue for infringement and therefore asserts that its rights, and its causes of action, emanate from this exclusive licensing agreement to use those patents. Appellant generally contends in the Complaint that appellee violated its rights under the agreement by facilitating the transfer of reward points using software that was not licensed to use the patents. In other words, appellant alleges that appellee is unjustly benefiting from using another software program to facilitate the transfer of reward points.

To evaluate the merit of this claim and decide whether appellee has been unjustly enriched, the trial court will have to construe the patents, determine their validity, and interpret their scope. *See Point Conversion, LLC v. Tropical Paradise Resorts, LLC*, 339 F. Supp. 3d 1350, 1355 (S.D. Fla. 2018) ("Before Plaintiff can obtain relief on any of its claims, a court will necessarily have to determine whether the licensed patents . . . are valid."); *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1363 (Fed. Cir. 2019) (holding that a patent issue was not "necessarily raised" in the plaintiff's unjust enrichment claim because the plaintiff gave the defendant an exclusive license to use its patents and could easily show that it conferred a benefit on the defendant). If a court finds that the patents have not been infringed upon, appellee could not have been unjustly enriched, thus defeating this as well as the other claims raised. Therefore, appellant's unjust enrichment claim does "necessarily" raise an issue of federal law.

7

## Count 2. Permanent and Temporary Injunctive Relief

For a plaintiff or petitioner to obtain a temporary injunction, this court has stated that they must establish the following four elements: "(1) irreparable harm will result if the temporary injunction is not entered; (2) an adequate remedy at law is unavailable; (3) there is a substantial likelihood of success on the merits; and (4) entry of the temporary injunction will serve the public interest." *Donoho v. Allen-Rosner*, 254 So. 3d 472, 474 (Fla. 4th DCA 2018) (citations omitted). To obtain a permanent injunction, the plaintiff "must 'establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief.'" *Hollywood Towers Condo. Ass'n v. Hampton*, 40 So. 3d 784, 786 (Fla. 4th DCA 2010) (citations omitted). Irreparable harm "is an injury of such a nature that it cannot be redressed in a court of law." *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 166 So. 2d 488, 491–92 (Fla. 2d DCA 1964) (citations omitted).

In its claim for injunctive relief, appellant contends that it was irreparably harmed by appellee's continued encouragement of its patron's use of a non-licensed, third-party platform to transfer points. To decide whether appellant was irreparably harmed by these actions, the trial court must determine whether appellee violated appellant's rights under the patent. For this issue, the trial court must also construe the validity of the patent to determine whether appellee is prohibited from creating or using third-party software to facilitate the exchange of reward points. Thus, this claim also necessarily raises an issue of federal law.

## Count 3. Conversion

Conversion is "an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. 4th DCA 1993) (citations omitted).

Appellant contends that its exclusive license agreement with the patent owner granted it the right to create reward point conversion software using the subject patents, and that appellee is wrongfully asserting dominion over that right by using another reward point conversion software. As with the prior claims, the trial court would have to evaluate the validity and scope of the patents to some extent. Therefore, the appellant's conversion claim likewise raises an issue of federal law. *See MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 841-42 (11th Cir. 2013) (finding that a breach of contract claim necessarily raised a federal issue that was actually disputed because plaintiff licensee was required to prove that the questioned device the defendant developed and promoted infringed the licensed patents).

## Count 4. FDUTPA

FDUTPA "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat. (2019). "Although not specifically identified in the statute, there are basically three elements that are required to be alleged to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008); *see also Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019) (same). The Florida Supreme Court defines a deceptive act as a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citation omitted). The Court further defines an unfair practice as "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (citations omitted).

Under its FDUTPA claim, appellant contends that appellee was engaging in a deceptive act or unfair practice by "providing, exchanging, and accepting reward points to and from customers across program boundaries without Point Conversions software or some other software with a license to the JB set of patents." While it is a much closer call as to whether this pure state law claim founded on a state statute raises any issues of federal law, we hold that it does in this case. As with the other claims, the potential exists that the trial court may have to interpret the validity and scope of the patents to decide the issue, which in this claim is whether appellee's actions were deceptive or unfair. Once the subject patents are evaluated, the court will be able to determine whether they grant appellant the right to discourage the use of third-party reward point conversion software, or whether appellee can accept points that were converted using such a program. *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 18-CV-60912, 2019 WL 78983, at *2 (S.D. Fla. Jan. 2, 2019) ("Point Conversions' FDUTPA counterclaims depend entirely on whether Rodeway and Choice Hotel's infringed the patent at issue").

## B. Whether an issue of federal law is "actually disputed."

*Gunn*'s second factor to be analyzed is whether an issue of federal law, in this case patent or copyright law, is "actually disputed." *See Gunn*, 568 U.S. at 258. At their core, appellant's causes of action are more akin to claims of interference with a contract, or more precisely, a claimed infringement upon an exclusive licensing agreement with the patent owner. The causes of action do not dispute the validity of the subject patents, nor will the outcome affect their scope. Additionally, because appellee has filed no answer to the complaint and has yet

to address the merits of appellant's claims, it is difficult to ascertain whether an issue of federal law is actually disputed. *Cf. Gunn,* 568 U.S. at 259 (concluding that a federal issue was actually disputed because the "the central point of dispute [on the merits]" was whether the experimental-use exception applied to a claim of patent infringement); *Inspired Dev. Grp., LLC,* 938 F.3d at 1363 (concluding that the issue was actually disputed because the defendant below denied that it manufactured or sold products in an infringing manner); *NeuroRepair,* 781 F.3d at 1345 (concluding that the issue of whether the defendant timely filed the patent at issue was actually disputed). However, for the purposes of our analysis, we will assume that appellee actually disputes appellant's claims regarding the scope and validity of JB's patents, *inter alia.*

## C.  Whether the federal issues involved in the case are "substantial."

*Gunn*'s third factor asks whether the federal issue within the state law claim was "substantial." *See Gunn,* 568 U.S. at 258. The substantiality inquiry "looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260.

In *NeuroRepair,* the Court of Appeals for the Federal Circuit stated that "a substantial federal issue is more likely to be present" when the following three elements are met: (1) "a 'pure issue of [federal] law' is 'dispositive of the case,'" (2) "the court's resolution of the issue will control 'numerous other cases,'" and (3) "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action." *NeuroRepair,* 781 F.3d at 1345 (citations omitted); *see also MDS (Canada), Inc. v. Rad Source Techs., Inc.,* 720 F.3d 833, 842 (11th Cir. 2013).

First, as to whether a pure issue of federal law is dispositive, we cannot say that one is in this case.[2] Even though patent law issues may necessarily be raised by appellant's four state law claims, that does not end the inquiry. After the trial court construes the various patents, appellant would still have to prove each element of its four separate claims—all which involve questions of both fact and Florida law—to prevail. *See Ragner Tech. Corp.,* 2020 WL 1244863, at *4 (stating that a patent issue was not dispositive because plaintiff had to prove elements of its fraudulent misrepresentation and breach of contract claims, which involved questions of fact and Florida law). For example, under appellant's unjust enrichment claim in Count 1, assuming it is proved that appellant has "conferred a benefit" on appellee, appellant would also have to prove that appellee had knowledge of that benefit—a matter that involves both questions of fact and Florida law. *See id.; see also Della Ratta,* 927 So. 2d at 1059 (stating the elements of an unjust enrichment claim); *MDS (Canada) Inc.,* 720 F.3d at 842 (stating that a question of patent infringement was "heavily 'fact-bound and

---

[2] Even if a pure issue of federal law is dispositive of appellant's claims, the other two *NeuroRepair* factors evaluated below support a finding that the federal issues within appellant's claims are not substantial.

10

situation specific,'" and required "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law") (citations omitted). Similar questions of fact and law must be decided on the other counts as well. Therefore, under *NeuroRepair*'s first element, no pure issues of federal law are dispositive of any of appellant's four causes of action.

Second, the trial court's resolution of this issue will not control "numerous other cases." Assuming this case is adjudicated to its end in state court, a subsequent federal court would not be controlled by the Fifteenth Circuit court's determinations. *See Inspired Dev. Grp., LLC*, 938 F.3d at 1364-65. While those determinations might influence other state circuit courts where appellant brought similar claims, those courts would not necessarily be bound by them. *See Carillon Cmty. Residential v. Seminole Cnty.*, 45 So. 3d 7, 11 (Fla. 5th DCA 2010) (stating that a state circuit court was not bound to follow the decision of another state circuit court); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."). And although other state courts may find that appellant is estopped by the Fifteenth Circuit's determinations and findings, this is not the same as controlling "numerous other cases" within the meaning of *Gunn, MDS (Canada) Inc.,* or *NeuroRepair* because any such determination would likely be limited to the ongoing disputes between appellant and other franchisees pending in the various state courts. *See Ragner Tech. Corp.*, 2020 WL 1244863, at *4; *see also MDS (Canada) Inc.*, 720 F.3d at 842 ("the highly specialized nature of patent claims and the niche market for the [devices] suggest[ed] that the resolution of th[e] issue [was] unlikely to impact any future constructions of claims.").

Third, we cannot find that the government has a direct interest in this dispute between these parties because, as previously stated, the resolution of this case will not control "numerous other cases." Appellant seeks to establish not only that the subject patents are valid, but also that the owner conveyed exclusive rights to them through its licensing agreement. This analysis is "heavily 'fact-bound and situation-specific'" and will not result in resolving a general question of patent law likely to affect future cases. *See MDS (Canada) Inc.*, 720 F.3d at 842 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)). Thus, it is evident that the federal issues within appellant's state law causes of action are not "substantial in the relevant sense." *See Gunn*, 568 U.S. at 260; *MDS (Canada) Inc.*, 720 F.3d at 842 (finding the government's interest was minimal given the fact-specific nature of the patent issue). Therefore, the issue of patent infringement here, while necessarily raised, is not substantial enough to confer federal jurisdiction over appellant's state law claims.

We should note that we are not the first court to find similar federal issues were not "substantial" under the *Gunn* analysis. In another case, appellant filed

suit against a third-party for similar alleged infringement on its reward point conversion software. *See Tropical Paradise Resorts, LLC*, 339 F. Supp. 3d at 1353. After appellant filed its suit in state court, the defendant attempted to have the case removed to federal court, claiming the state court lacked subject matter jurisdiction; the defendant alleged, as do appellees here, that the action "arose under" the federal patent law. In that removal action, the district court examined the same four claims as found in this Complaint for the purposes of deciding section 1338 federal jurisdiction. *Id.* The district court opined that while the complaint raised a federal issue because "a court will necessarily have to determine whether the licensed patents . . . are valid," the issue of patent infringement was not "substantial." *Id.* at 1355-56. The court reasoned that because appellant's claimed patented technology was "highly specialized," the patent analysis would be "fact-specific" and would "not result in resolving a general question of patent law likely to affect future cases." *Id.* at 1356. As such, the court concluded that the government did not have a strong interest in litigating the issue in federal court and ordered the case to be remanded to the state court. *Id.* at 1356, 1359. We agree with that analysis.

### D. Whether the state law claims are capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Gunn*'s fourth factor asks whether exercising federal jurisdiction over state law claims would "disrupt[] Congress's intended division of labor between state and federal courts." *See id.* at 258. Because we hold that the issues of federal law within the four counts were not "substantial," we also find that bringing these claims in federal court would indeed disrupt Congress's intended division of labor between state and federal courts. *See id.*; *see also MDS (Canada) Inc.*, 720 F.3d at 843 ("To hold that all questions of patent infringement are substantial questions of federal law for the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court.").

We understand the lower court's predicament in believing it was compelled to apply *Solar Dynamics* to this case. Any district court of appeal decision controls the lower courts in the absence of a decision by the appellate court overseeing its own district. *See Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992). However, we are not bound by a sister appellate court's decision, *see Durham v. Palm Court, Inc.*, 558 So. 2d 59, 60 (Fla. 4th DCA 1990), just as we are not controlled by a federal district court's decision, *see Pignato v. Great W. Bank,* 664 So. 2d 1011, 1015 (Fla. 4th DCA 1995). That said, however, we *are* bound by the United States Supreme Court's decisions, and as a result we are obligated to follow them. *See Pignato,* 664 So. 2d at 1015.

In *Solar Dynamics*, the Second District declined to follow *Gunn*, noting that their case was distinguishable from it; we, in turn, see this case as distinguishable from *Solar Dynamics* because, unlike in that case where the

patents' enforceability or validity was likely dispositive of the malpractice claim, here the underlying patents' validity is not being directly attacked.

The Second District in *Solar Dynamics* also believed the trial court lacked subject matter jurisdiction over the case because the state trial court would have been required to rule *in the first instance* upon the scope, validity, or infringement. *See Solar Dynamics*, 211 So. 3d at 298, 301. To the Second District, these were "core concepts of patent law" that conferred "arising under" jurisdiction exclusively in federal district court. *See id.* at 299. However, we see that concern was effectively dismissed by the United States Supreme Court. *See Gunn*, 568 U.S. at 258. ("[S]tate legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a)."). As a result, at least two appellate courts in other states have ruled similarly. *See Wonders v. Johnson*, 01-12-00438-CV, 2013 WL 3771313, at *3 (Tex. Ct. App. July 16, 2013) (reversing a state trial court that dismissed a patent-related legal malpractice claim for lack of subject matter jurisdiction after improperly concluding that the claim should have been filed in federal court); *Schmirler v. Essmann*, 2012AP462, 2013 WL 12182164, at *1 (Wis. Ct. App. June 5, 2013) (same); *see also Warsaw Orthopedic, Inc. v. Sasso*, 162 N.E.3d 1, 12-26 (Ind. Ct. App. 2020) (handling claims regarding a patent after a federal court ruled it did not have jurisdiction under *Gunn*). One federal court has even referred to *Solar Dynamics* as an "outlier" and noted that no other federal or state court has either cited to it or followed the reasoning therein. *See Exceller Software Corp. v. Dine*, 1:18-CV-538, 2019 WL 6606084, at *3 (S.D. Ohio Dec. 5, 2019).

Although appellee challenges the subject matter jurisdiction of the state court, it made no attempt either to remove this case to federal court or lodge a preemption defense as other defendants who have defended against appellant's complaints have done. *See Tropical Paradise Resorts, LLC*, 339 F. Supp. 3d at 1353; *see also Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 2019 WL 78983, at *2 (finding no error in the conclusion that Point Conversions' state-law counterclaims were preempted by federal patent law). In *Tropical Paradise*, after the case was removed to federal court, the federal court found that it lacked jurisdiction over these identical state law claims and remanded the case to state court citing *Gunn*, among other cases. *See* 339 F. Supp. 3d at 1353. This decision likely informed appellant where to file this lawsuit. *See id.* While nothing requires appellee to request the removal of this matter to federal court, we find *Tropical Paradise* instructive in deciding how a federal court is likely to decide the jurisdictional issues presented here. *See id.*

Therefore, we decline to follow the Second District's holding in *Solar Dynamics* and instead apply the United States Supreme Court's precedent in *Gunn*. We find that the lower court has subject matter jurisdiction over this matter, and

thus we reverse the order dismissing the case and remand for further proceedings.

*Reversed and remanded for further proceedings.*

D<span>AMOORGIAN</span> and C<span>IKLIN</span>, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**